FILED

2015 NOV 18 PM 2:52

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ABILITY HOUSING OF NORTHEAST
FLORIDA, INC., a Florida not-for-profit
corporation,

    Plaintiff,

v.                                              Case No.: 3:15-cv-1380-J-32PDB

CITY OF JACKSONVILLE, a Florida
municipal corporation,

    Defendant.
_____/

## COMPLAINT
### (With Demand for Injunctive Relief)

Ability Housing of Northeast Florida, Inc. ("**Ability Housing**") is a charitable organization that provides affordable housing to some of Jacksonville's most vulnerable citizens—the disabled and homeless. In 2013, Ability Housing agreed to purchase a 12-unit apartment building in Jacksonville's historic Springfield neighborhood. The building is close to the Veterans Administration health clinic and other services frequently used by disabled veterans. Ability Housing planned to renovate the building using a $1,355,222 forgivable loan from Florida Housing Finance Corporation and rent the apartments to disabled, homeless veterans. To close on the financing, Ability Housing had to demonstrate that it had obtained all required approvals for the renovations and that the building permit would issue upon payment of the required fee. The only approval Ability Housing needed to obtain the building permit was a Certificate of Use from the City's Planning Department. It is normally a planning department staff member's responsibility to issue Certificates of Use; however, in

{36631544_1.docx}

this instance, the process was subverted by elected officials, who bent to the will of a vocal group of Springfield residents, including a number of elected and appointed officials, that were openly hostile to and expressed discriminatory motives against the disabled. City officials deliberately ignored and refused to consider protections afforded the disabled under the Federal anti-discrimination laws when giving in to pressure from the Springfield residents and ultimately denying Ability Housing a Certificate of Use. As a result, Ability Housing lost its funding, was prohibited from fulfilling its mission and lost over $124,000 in out-of-pocket expenses spent in its efforts to acquire and renovate the apartments. Ability Housing now seeks to have the City's denial of the Certificate of Use declared illegal and to recover its damages so that it can pursue its mission of providing housing to the disabled and homeless.

Accordingly, Plaintiff, Ability Housing, sues Defendant, City of Jacksonville (the "**City**") for violating the Fair Housing Act (the "**FHA**"), 42 U.S.C. § 3601 et seq., and the Americans with Disabilities Act (the "**ADA**"), 42 U.S.C. § 12131 et seq., and alleges:

### Parties, Jurisdiction, and Venue

1. Ability Housing is a Florida not-for-profit corporation with its office and principal place of business in Jacksonville, Florida.

2. The City is a Florida municipal corporation.

3. This City is subject to this Court's personal jurisdiction.

4. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the claims set forth herein, which arise under the laws of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391 because, inter alia, the acts or omissions giving rise to the claims alleged occurred within the Middle District of Florida.

### Ability Housing & The Disabled Population it Serves

6. Ability Housing was formed in 1991 and originally operated a group-home in Jacksonville to serve six (6) developmentally disabled adults. Since then, Ability Housing has grown, but with continued focus on serving the needs of adults with disabilities.

7. In 2004, Ability Housing expanded its mission to create permanent housing solutions for homeless families and individuals, and today, Ability Housing is the only not-for-profit in Jacksonville that focuses on the development and operation of quality affordable rental housing for individuals and families experiencing or at risk of homelessness.

8. According to the U.S. Department of Housing and Urban Development's most recent Point In Time survey, 2,049 Jacksonville residents were homeless on January 22, 2014. Of these, 243 were reported to be severely mentally ill and 224 were veterans.

9. As of the date of this Complaint, Ability Housing operates rental apartments on Jacksonville's Southside (83 units), Eastside (112 units) and Westside (43 units) and another 29 single-family rental properties scattered throughout the city.

### Cottage Avenue Apartments

10. In November, 2013, Ability Housing agreed to purchase a 12-unit apartment building located at 139 Cottage Avenue in Jacksonville's Springfield neighborhood (the "Cottage Avenue Apartments" or "Property").

11. The Cottage Avenue Apartments were built in 1929 as an apartment building and have remained in that use continuously since.

12. Ability Housing intended to renovate the Cottage Avenue Apartments and continue to operate them as a 12-unit apartment building, with each apartment having its own entrance, bath and kitchen.

13. Proposed renovations would not enlarge the building or individual apartments.

14. Ability Housing intended to rent the apartments to Jacksonville's chronically homeless, disabled population, most or all of whom have either a primary diagnosis of mental illness, including some with long histories of psychiatric hospitalization, or chronic illnesses, such as COPD, HIV/AIDS, heart disease and diabetes (the "**Tenants**").

15. Each Tenant's disability substantially limits one or more major life functions.

16. Due to the proximity to the Veterans Administration health clinic and other services used by veterans, Ability Housing planned to rent the Cottage Avenue Apartments to disabled veterans, many of whom are eligible to participate in the U.S. Department of Housing and Department of Veterans Affairs' Supportive Housing Program (HUD-VASH), which provides vouchers to landlords, like Ability Housing, to reduce the rent paid by disabled veterans in an effort to alleviate homelessness in that vulnerable population.

17. Ability Housing's agreement to purchase the Cottage Avenue Apartments has been amended five (5) times, primarily to extend the closing date to allow Ability Housing to obtain necessary land use and other approvals from the City; according to the terms of the agreement, as amended, closing is to occur on or before December 31, 2015.

18. In January, 2014, Florida Housing Finance Corporation issued Request for Applications 2014-101, offering funding for permanent supportive housing projects of 15 units or less for chronically homeless persons and families.

19. In February, 2014, Ability Housing responded to Request for Applications 2014-101 and applied for funds to purchase and renovate the Cottage Avenue Apartments.

20. Ability Housing's application made clear that it "anticipated that most [Tenants] will have a primary diagnosis of mental illness and a long history of psychiatric hospitalization. Others may have chronic illnesses, such as COPD, HIV/AIDS, heart disease and diabetes."

21. In support of Ability Housing's application, the City, through its Planning Services Manager, certified that the Cottage Avenue Apartments were zoned RMD-S and that the proposed number of units and intended use were consistent with the land use regulations and zoning designation or allowed as a legally non-conforming use. A copy of the City's certification is attached hereto as **Exhibit 1**.

22. Ability Housing's application was approved on March 14, 2014 and Florida Housing Finance Corporation agreed to extend funding of up to $1,355,222 for the purchase and renovation of the Cottage Avenue Apartments.

23. Ability Housing paid architects, engineers, land use counsel and other professionals in excess of $124,000 to develop plans and obtain necessary approvals for Ability Housing's purchase and renovation of the Cottage Avenue Apartments.

### NIMBY Opposition and the City's Written Interpretation

24. Section 656.365 et seq. of the City's Code of Ordinances is the codification of the Springfield Zoning Overlay, which establishes specific zoning regulations for the Springfield Historic District.

25. The Cottage Avenue Apartments, which are located within the Springfield Historic District, are zoned RMD-S.

26. Permitted uses under RMD-S zoning include: "original use[1] multiple-family dwellings." § 656.368(I)(a)(4), City Code of Ordinances.

27. In March, 2014, after learning that Florida Housing Finance Corporation awarded Ability Housing the funding, Springfield residents, Jack Meeks and JoAnn Tredennick, hired E. Owen McCuller, Jr. to lobby the City on their behalf against Ability Housing's purchase, renovation and operation of the Cottage Avenue Apartments.

28. On March 28, 2014, Mr. McCuller wrote Calvin Burney, the City's Planning Director at the time, to request a written opinion concerning whether the "proposed use ... is consistent with the Springfield Zoning Overlay."

29. In connection with his written request, Mr. McCuller noted that the Cottage Avenue Apartments would provide permanent housing to those with:

> (a) a diagnosable substance abuse disorder, or (b) a serious mental illness, or (c) a developmental disability, or (d) a chronic physical illness or disability, including co-occurrence of two or more of these conditions and that most residents [of the Cottage Avenue Apartments] will have a diagnosis of mental illness and long history of psychiatric hospitalization.

30. On April 3, 2014, Springfield residents organized a meeting, which was attended by Ability Housing and City officials, including Mr. Burney, City Zoning Administrator Folks Huxford, and City Councilmen Robin Lumb and Bill Gulliford.

31. At the meeting, Springfield residents voiced heated opposition to Ability Housing's plan based upon concerns that the disabled Tenants posed an unspecified threat to

---

[1] § 656.366(a), City Code of Ordinances, provides that: "Original use means the original use of a structure at the time of its construction."

the Springfield neighborhood, which included the comment by Mr. Meeks that Ability Housing should "take it [housing for the disabled] someplace else."

32. Despite the vocal opposition from Springfield residents, Mr. Burney told those in attendance that, based upon what he knew, Ability Housing's proposed use of the Cottage Avenue Apartments—rental to chronically homeless, with a focus on disabled veterans—was a multiple-family dwelling allowed under the Springfield Zoning Overlay.

33. At the time, Mr. Huxford shared Mr. Burney's belief.

34. The following day, on April 4, 2014, Mr. McCuller wrote Mr. Burney again to repeat his argument that the proposed use of the Cottage Avenue Apartments was not allowed because the residents would have "diagnosed mental illnesses."

35. On May 15, 2014, Duval County School Board member Paula Wright organized another meeting with Ability Housing and area residents, who again voiced opposition to the project based on the Tenants being disabled and voiced similar sentiments of "take it [housing for the disabled] somewhere else" as had been voiced at the April 3, 2014 meeting.

36. Ms. Wright also organized a "Community Walk for Awareness and Prevention" on May 17, 2014, which was attended by about 40 Springfield residents, including City Councilman Johnny Gaffney.

37. During the march, Ms. Wright "inform[ed] the neighborhood residents of the possibility of [Ability Housing's purchase and proposed operation of the Cottage Street Apartments to house the disabled]" and Councilman Johnny Gaffney voiced concerns that the disabled residents would pose a safety risk to area children.

38. The statements made by Springfield residents, including numerous elected and appointed City officials, in opposition to Ability Housing's proposed operation of the Cottage Avenue Apartments did not provide any legitimate basis for the City to deny Ability Housing the opportunity to rent the Cottage Avenue Apartments to chronically homeless, disabled individuals; rather, the statements were founded on illegitimate fears[2] based on the fact that the proposed residents are disabled.

39. On May 29, 2014, Mr. Burney provided Mr. McCuller a written interpretation, a copy of which is attached hereto as **Exhibit 2** (the "**Written Interpretation**").

40. Despite the City's prior position that the proposed operation of the Cottage Avenue Apartments by Ability Housing was considered a multiple-family dwelling, the Written Interpretation gave in to the vocal opposition of Springfield residents and concluded that "the proposed use [of the Cottage Avenue Apartments] should be categorized as a special use rather than a multiple-family dwelling, and as such, would be considered a special use prohibited in the Springfield Zoning Overlay."

41. "Special uses include residential treatment facilities, rooming houses, emergency shelter homes, group care homes, and community residential homes over six residents." § 656.368(I)(d), City Code of Ordinances.

42. "Special uses" are "not allowed in the [Springfield Historic] district." § 656.368(I)(d), City Code of Ordinances.

43. In support of the Written Interpretation, Mr. Burney relied upon the fact that the Cottage Avenue Apartments would "serve chronically homeless adults" and that:

---

[2] Congress clearly recognized that such fears are illegitimate by enacting the ADA and FHA.

[A]ll residents will have a disability diagnosed by a licensed professional health care provider, and it is anticipated that most residents will have a primary diagnosis of mental illness and a long history of psychiatric hospitalization.

44. Ability Housing appealed the Written Interpretation, arguing that, because "the intended use [was] as independent and separate multiple-family residences for homeless veterans, without on-site provision of services, meals and the like, and without communal facilities," the proposed use was a multiple-family dwelling and not a special use.

45. Following Ability Housing's appeal of the Written Interpretation, but before a hearing on the appeal was held by the City's Planning Commission, Springfield residents engaged in a large-scale letter-writing and public relations campaign in opposition to Ability Housing's proposed purchase and operation of the Cottage Avenue Apartments, urging the Planning Commission to uphold the Written Interpretation.

46. The primary argument against Ability Housing's plan for the Cottage Avenue Apartments again focused on (a) the fact that the Tenants would be chronically homeless and disabled, and (b) the belief that these disabled people might pose a threat to area residents.

47. This campaign included numerous e-mails from Springfield residents to the City and a July 31, 2014 letter from Springfield resident Nikolai Vitti, the Superintendent of Duval County Public Schools, and Ms. Wright on Duval County Public Schools letterhead, in which Mr. Vitti and Ms. Wright acknowledge that the Cottage Avenue Apartments would serve homeless, disabled adults before going on to conclude that this would pose an unspecified danger to children attending school nearby.

48. The media covered the neighborhood opposition in a series of articles featured on Channel 4, WJCT, Jacksonville.com and Metrojacksonville.com.

49. A hearing was held before the City's Planning Commission on September 4, 2014 on Ability Housing's appeal of the Written Interpretation.

50. Numerous Springfield residents attended the September 4, 2014 hearing to oppose Ability Housing's proposed purchase and operation of the Cottage Avenue Apartments.

51. The City's presentation to the Planning Commission focused on the fact that "Ability [Housing] specifically says the Cottage Avenue [A]partments will serve chronically homeless adults without children" and that "[a]ll residents will have a disability diagnosed by a licensed health care provider."

52. The City then went on to justify its Written Interpretation because Ability Housing would coordinate off-site services for its disabled Tenants.

53. The Planning Commission affirmed the Written Interpretation after refusing to consider whether the Written Interpretation or Springfield Zoning Overlay violated the FHA or ADA.

54. To the extent that the Written Interpretation and decision on appeal were somehow proper under the Springfield Zoning Overlay—that is, to the extent that the Springfield Zoning Overlay itself prohibits housing for the disabled—the Springfield Zoning Overlay violates both the FHA and ADA.

### The City's Code Enforcement Action

55. Ability Housing inquired as to the presence of outstanding code violations during the summer of 2014 and was notified of none.

56. Additionally, in the summer of 2014, the City's business records showed only that a code enforcement violation had been "closed" in 2012.

57. Because Ability Housing continued forward following affirmance of the Written Interpretation and opposition from some Springfield residents, the City instituted an action in state court on November 21, 2014 against the current owner of the Cottage Avenue Apartments for failure to obtain permits to replace 37 windows in 2010. A copy of the Complaint filed by the City in the code enforcement action is attached hereto as **Exhibit 3**.

58. In its suit, the City seeks $19,000 per day for the unpermitted window replacement by the current owner, collectible through imposition of a lien on the Property.

59. The penalties sought by the City potentially range into the millions of dollars, many times the market value of the Property.

60. The City's claim to $19,000 per day in penalties is pretextual and not rationally related to any alleged harm that has been caused by the current owner.

61. Instead, the City's lawsuit is intended to frustrate and otherwise interfere with Ability Housing's efforts to provide housing to the disabled.

62. In conjunction with the filing of its suit, the City also recorded a Lis Pendens against the property, which adversely affects Ability Housing's ability to close on the purchase.

**Further NIMBY Opposition and the City's Certificate of Use Denial**

63. On July 1, 2015, Ability Housing submitted an application for a Certificate of Use (the "**COU Application**") to the City's Planning and Zoning Department.

64. The COU Application noted that (a) the "Previous Use" of the Cottage Avenue Apartments was as "Apartments," (b) the "Proposed Use" would again be "Apartments," and (c) both the previous and proposed uses were multiple-family dwellings.

65. Section 656.151 et seq. of the City's Code of Ordinances requires a certificate of use for "each multi-family building located within the City" and lays out the process for obtaining a certificate of use.

66. Pursuant to Section 656.153 of the City's Code of Ordinances, the review process extends only to "changes in use, expansion of square footage or inclusion of new uses."

67. Ability Housing did not propose a change in use, to expand square footage or to include new uses; instead, it only sought a certificate of use because of a change in ownership.

68. While a certificate of use is required for any change in ownership, the City's Code of Ordinances does not set out a review process or criteria for reviewing certificate of use applications relating only to a change in ownership.

69. As matter of practice, the City's Zoning Administrator issues certificates of use without input or direct oversight by the City's Planning Director.

70. In the case of Ability Housing's COU Application, however, the Zoning Administrator (Sean Kelly at the time) did not decide whether to approve it.

71. Instead, that decision was made by the City's Planning Director (by that time, Mr. Huxford) "in concert with [the City's Office of General Counsel]."

72. Before deciding whether to approve or deny the COU Application, Mr. Huxford also spoke with the Mayor's Chief Administrative Officer, Sam Mousa, who told Mr. Huxford to follow the Written Interpretation.

73. Mr. Mousa was also contacted on July 7, 2015 by former City Council President and government relations professional Alberta Hipps seeking his "assistance in making sure a COU, or any other permitting . . . is not issued."

74. While Mr. Huxford believed that the proposed use was a multiple-family dwelling in April 2014 when he served as Zoning Administrator, by the time Mr. Huxford reviewed the COU Application as Planning Director, he followed Mr. Mousa's direction and denied the COU Application on July 29, 2015 (the "**COU Denial**," a copy of which is attached hereto as **Exhibit 4**).

75. On August 26, 2015, Ability Housing appealed the COU Denial.

76. The City's Certificate of Use Board, chaired by Mr. Huxford, held a hearing on October 16, 2015 on the appeal of the COU Denial.

77. Numerous Springfield residents, including City Councilman Reggie Gaffney, Mr. Meeks and Ms. Tredennick, also attended the October 16, 2015 appeal hearing.

78. Before the hearing, Mr. Huxford spoke with Mr. Mousa, the Mayor's Chief Administrative Officer, and asked that Mr. Mousa notify the Mayor's Chief of Staff, Kerri Stewart, a Springfield resident, of the hearing because Mr. Huxford "thought she would want to know."

79. At the outset of the hearing, Reggie Gaffney engaged in ex parte communications with Mr. Huxford and announced to the packed audience that, while he was

"just told [he] cannot speak," he was "in support of the [Springfield] community and [] in opposition of [the City] moving forward with th[e rental of the Cottage Avenue Apartments to the disabled]."

80. Like the Planning Commission, the City's Certificate of Use Board refused to consider whether the COU Denial or the Springfield Zoning Overlay itself violated either the FHA or the ADA.

81. At the conclusion of the appeal hearing, the City's Certificate of Use Board denied Ability Housing's appeal and subsequently issued an Order Denying Appellant's Appeal of Certificate of Use, a copy of which is attached hereto as **Exhibit 5**.

### Impact on Ability Housing

82. The City's decisions to (a) issue the Written Interpretation, (b) deny Ability Housing's appeal of the Written Interpretation, (c) institute the code enforcement action, (d) deny Ability Housing's COU Application, and (e) deny Ability Housing's appeal of the COU Denial were motivated by animus of the City's decision-makers, or those to whom the City's decision-makers were responsive, toward the Tenants on account of their disabilities.

83. As a result of the City's decisions, Ability Housing has been damaged in the following ways: (a) Ability Housing is unable to purchase the Cottage Avenue Apartments; (b) Ability Housing is unable to use the Florida Housing Finance Corporation funding; (c) Ability Housing failed to receive the benefit of funds paid for services relating to the Cottage Avenue Apartments; and (d) Ability Housing is unable to fulfill its mission to end homelessness for twelve disabled veterans by renting them an apartment at the Cottage Avenue Apartments.

84. All conditions precedent to bringing this action have occurred or have been waived.

85. Ability Housing has employed the law firm of Akerman LLP to represent its interests herein.

## COUNT ONE
### (Violation of FHA)

86. Ability Housing incorporates paragraphs 1-85 above as if fully set forth herein.

87. Each Tenant suffers from a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of having such an impairment or is being regarded as having such an impairment.

88. The City is violating Ability Housing's rights under the FHA by doing the following on account of the Tenants' handicaps:

- denying and otherwise making housing unavailable to Ability Housing and the Tenants;

- using the City's Springfield Zoning Overlay as a pretext to exclude Ability Housing and the Tenants;

- enforcing discriminatory zoning rules and policies against Ability Housing and the Tenants;

- interfering with Ability Housing's right to offer and with each Tenant's right to live in a dwelling of each Tenant's choice;

- failing to make reasonable accommodations in the City's Springfield Zoning Overlay and its application to afford Ability Housing and the Tenants an equal opportunity to use and enjoy the Cottage Avenue Apartments;

- retaliating against Ability Housing for exercising its legal rights under the FHA; and

- making, printing or publishing, or causing to be made, printed or published a statement in connection with the sale or rental of housing that indicates a limitation, preference or discrimination on the basis of handicap.

89. Ability Housing has been irreparably injured by the City's discriminatory housing practices toward Ability Housing and the handicapped Tenants.

90. Unless the City is enjoined from violating the FHA and continuing to deny Ability Housing a Certificate of Use, Ability Housing will continue to suffer harm as it will be unable to purchase and operate the Cottage Avenue Apartments to provide homes to disabled, homeless persons.

91. The injuries caused to Ability Housing as a result of the City's discriminatory housing practices and denial of the Certificate of Use outweigh any potential harm to the City which would result from entry of an injunction enjoining the City from violating the FHA and denying Ability Housing the Certificate of Use.

92. An injunction enjoining the City from violating the FHA and continuing to deny Ability Housing the Certificate of Use would not disserve the public interest. To the contrary, an injunction, which would allow Ability Housing to fulfill its mission by purchasing and operating the Cottage Avenue Apartments, would serve the public interest by providing homes to 12 disabled, homeless persons in Jacksonville.

**WHEREFORE,** Plaintiff, Ability Housing of Northeast Florida, Inc. requests that the Court enter judgment in its favor and against the City of Jacksonville:

a. Declaring that the City has illegally discriminated against Ability Housing and the handicapped individuals Ability Housing serves in violation of the FHA;

b. Declaring that the Springfield Zoning Overlay violates the FHA;

c. Enjoining the City from violating the FHA and ordering the City to issue Ability Housing a Certificate of Use for the Cottage Avenue Apartments;

d. Awarding Ability Housing damages available under the FHA;

e. Awarding Ability Housing its reasonable attorneys' fees and costs; and

f. Granting such other relief as is just and proper.

## COUNT TWO
### (Violation of ADA)

93. Ability Housing incorporates paragraphs 1-85 above as if fully set forth herein.

94. Ability Housing provides housing to people with disabilities as defined in 42 U.S.C. § 12102(2).

95. The Tenants are "qualified individuals with a disability" under 42 U.S.C. § 12131(1).

96. Each Tenant's disability substantially limits one or more of his or her major life functions.

97. The City is a "public entity" under 42 U.S.C. § 12131(1).

98. Actions by the City to exclude Ability Housing and the disabled Tenants from the Springfield Historic District violate Ability Housing's and the disabled Tenants' rights under the ADA and the regulations promulgated thereunder.

99. The City is violating Ability Housing's rights under the ADA by doing the following on account of the Tenants' disabilities:

- denying Ability Housing and the disabled Tenants the opportunity to participate in or benefit from the supportive housing the Ability Housing offers;

- using and administering land use and building codes with the purpose and effect of subjecting Ability Housing and the disabled Tenants to discrimination;

- subjecting Ability Housing and the disabled Tenants to discrimination;

- using the City's Springfield Zoning Overlay and permitting requirements to deny Ability Housing and its disabled Tenants the enjoyment of rights, privileges, advantages, and opportunities enjoyed by non-disabled individuals in a manner that is discriminatory against Ability Housing and its disabled Tenants.

**WHEREFORE,** Plaintiff, Ability Housing of Northeast Florida, Inc. requests that the Court enter judgment in its favor and against the City of Jacksonville:

a. Declaring that the City has illegally discriminated against Ability Housing and the disabled individuals Ability Housing serves in violation of the ADA;

b. Declaring that the Springfield Zoning Overlay violates the ADA;

c. Awarding Ability Housing damages available under the ADA;

d. Awarding Ability Housing its reasonable attorneys' fees and costs; and

e. Granting such other relief as is just and proper.

Dated: November 18, 2015

By: *Edward B. Cole*
Edward Cole (Fla. Bar No. 0574511)—Trial Counsel
Heather Solanka (Fla. Bar No. 0497347)—Trial Counsel
Allison Stocker (Fla. Bar No. 0084472)—Trial Counsel
**AKERMAN LLP**
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730
Edward Cole E-mail: edward.cole@akerman.com
Heather Solanka E-mail: heather.solanka@akerman.com
Allison Stocker E-mail: allison.stocker@akerman.com