**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ABILITY HOUSING, INC., a Florida not-
for-profit corporation,

     Plaintiff,

v.                                    **Case No.: 3:15-cv-1380-J-32PDB**

CITY OF JACKSONVILLE, a Florida
municipal corporation,

     Defendant.

_____

DISABILITY RIGHTS FLORIDA, INC.,
on behalf of its clients and constituents,

     Plaintiff,

v.                                    **Case No.: 3:15-cv-1411-J-32PDB**

CITY OF JACKSONVILLE, a Florida
municipal corporation,

     Defendant.

_____/

## FIRST AMENDED COMPLAINT
### (With Demand for Injunctive Relief)

Ability Housing is a charity that provides housing to some of Jacksonville's most vulnerable citizens—its disabled and homeless. In 2013, Ability Housing contracted to purchase a 12-unit apartment building in Jacksonville's Springfield neighborhood. The building is close to a Veterans Administration clinic and other services used by disabled veterans. Ability Housing planned to renovate the building using $1,355,222 from Florida Housing Finance Corporation and rent the apartments to disabled, homeless

veterans. To close on the financing, Ability Housing had to obtain all required governmental approvals and demonstrate that a building permit would be issued upon payment of the required fee. The only governmental approval Ability Housing needed was a Certificate of Use from the City's Planning Department, which certifies that the proposed use is allowed under the City's zoning code. Normally, the City's Zoning Administrator issues Certificates of Use. However, in this instance, opposition to the project from a vocal group of Springfield residents, joined by high-level City elected and appointed officials, prevented Ability Housing from going forward. The City opposed and ultimately killed the project because it would house disabled, formerly homeless people. The City deliberately ignored and refused to consider fundamental protections afforded the disabled under federal anti-discrimination laws and denied Ability Housing a Certificate of Use. As a result, Ability Housing lost its funding, was prevented from fulfilling its mission, and lost over $124,000 in out-of-pocket expenses spent to acquire and renovate the apartment building.

In response, Ability Housing sued the City in November, 2015. The City retaliated immediately by cutting off Ability Housing's funding from *The Jacksonville Journey*—a City program that had provided funding to Ability Housing for years.

Ability Housing now seeks to have the City's denial of the Certificate of Use declared illegal and to recover its damages so that Ability Housing can pursue its mission of providing housing to the disabled and homeless.

Accordingly, Plaintiff, Ability Housing, Inc. f/k/a Ability Housing of Northeast Florida, Inc. ("**Ability Housing**"), sues Defendant, City of Jacksonville (the "**City**") for

violating the Fair Housing Act (the "**FHA**"), 42 U.S.C. § 3601 et seq., and the Americans with Disabilities Act (the "**ADA**"), 42 U.S.C. § 12131 et seq., and alleges:

## Parties, Jurisdiction, and Venue

1.      Ability Housing is a Florida not-for-profit corporation with its office and principal place of business in Jacksonville, Florida.

2.      The City is a Florida municipal corporation.

3.      This City is subject to this Court's personal jurisdiction.

4.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the claims set forth herein, which arise under the laws of the United States.

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because, inter alia, the acts or omissions giving rise to the claims alleged occurred within the Middle District of Florida.

## Ability Housing & The Disabled Population it Serves

6.      Ability Housing was formed in 1991 and originally operated a group-home in Jacksonville to serve six developmentally disabled adults. Since then, Ability Housing has grown and continued to focus on serving the needs of adults with disabilities.

7.      In 2006, Ability Housing expanded its mission to create permanent housing solutions for homeless families and individuals, and today, Ability Housing is the only not-for-profit in Jacksonville that focuses on the development and operation of quality affordable rental housing for individuals and families experiencing or at risk of homelessness and adults with disabilities.

8. According to the U.S. Department of Housing and Urban Development's Point In Time survey, 2,049 Jacksonville residents were homeless on January 22, 2014. Of these, 243 were reported to be severely mentally ill and 224 were veterans.

9. Ability Housing operates apartments on Jacksonville's Southside (83 units), Eastside (112 units) and Westside (43 units) and another 29 single-family rental properties scattered throughout the City as well as a 64-unit property in Orlando.

**Cottage Avenue Apartments**

10. In November, 2013, Ability Housing agreed to purchase a 12-unit apartment building located at 139 Cottage Avenue in Jacksonville's Springfield neighborhood (the "**Cottage Avenue Apartments**" or "**Property**").

11. The Cottage Avenue Apartments were built in 1929 as an apartment building and have remained in that use continuously since then.

12. Ability Housing intended to renovate the Cottage Avenue Apartments and continue to operate them as a 12-unit apartment building, with each apartment having its own entrance, bath and kitchen.

13. Proposed renovations would not enlarge the building or individual apartments.

14. Ability Housing intended to rent the apartments to Jacksonville's chronically homeless, disabled population, most or all of whom have either a primary diagnosis of mental illness, including some with long histories of psychiatric hospitalization, or chronic illnesses, such as COPD, HIV/AIDS, heart disease and diabetes (the "**Tenants**").

15.     Each Tenant's disability substantially limits one or more major of their life functions.

16.     Due to the proximity to a Veterans Administration clinic and other services used by veterans, Ability Housing planned to rent the Cottage Avenue Apartments to disabled veterans, many of whom are eligible to participate in the U.S. Department of Housing and Department of Veterans Affairs' Supportive Housing Program (HUD-VASH), which provides vouchers to landlords, like Ability Housing, to reduce the rent paid by disabled veterans in an effort to alleviate homelessness in that vulnerable population.

17.     Ability Housing's contract to purchase the Cottage Avenue Apartments was amended five times, primarily to extend the closing date to allow Ability Housing to obtain necessary approvals from the City; according to the terms of the contract, as amended, closing was to occur on or before December 31, 2015.

18.     In January, 2014, Florida Housing Finance Corporation ("**Florida Housing**") issued Request for Applications 2014-101, offering funding for permanent supportive housing projects of 15 units or less for chronically homeless persons and families.

19.     In February, 2014, Ability Housing responded to Request for Applications 2014-101 and applied for funds to purchase and renovate the Cottage Avenue Apartments.

20.     Ability Housing's application made clear that it "anticipated that most [Tenants] will have a primary diagnosis of mental illness and a long history of

psychiatric hospitalization. Others may have chronic illnesses, such as COPD, HIV/AIDS, heart disease and diabetes."

21.     In support of Ability Housing's application, the City certified that the Cottage Avenue Apartments were zoned RMD-S and that the proposed number of units and intended use were consistent with the land use regulations and zoning designation or allowed as a legally non-conforming use. A copy of the City's certification is attached as **Exhibit 1**.

22.     Ability Housing's application was approved on March 14, 2014 and Florida Housing agreed to extend funding up to $1,355,222 for the purchase and renovation of the Cottage Avenue Apartments.

23.     Ability Housing paid architects, engineers, land use counsel and other professionals in excess of $124,000 to develop plans and obtain necessary approvals for Ability Housing's purchase and renovation of the Cottage Avenue Apartments.

## NIMBY Opposition and the City's Written Interpretation

24.     Section 656.365 et seq. of the City's Code of Ordinances is the Springfield Zoning Overlay, which establishes specific zoning regulations for the Springfield Historic District.

25.     The Cottage Avenue Apartments, which are located within the Springfield Historic District, are zoned RMD-S.

26.     Permitted uses under RMD-S zoning include: "original use[1] multiple-family dwellings." § 656.368(I)(a)(4), City Code of Ordinances.

27.     In March, 2014, Ability Housing issued a press release announcing that Florida Housing had awarded Ability Housing funding, which was covered by local news outlets.

28.     In response, Springfield residents Jack Meeks and JoAnn Tredennick hired lobbyists E. Owen McCuller, Jr. and Alberta Hipps—a former City Council President—to oppose Ability Housing's purchase, renovation and operation of the Cottage Avenue Apartments.

29.     On March 28, 2014, Mr. McCuller wrote Calvin Burney, the City's Planning Director[2] at the time, to request an opinion concerning whether the "proposed use … is consistent with the Springfield Zoning Overlay."

30.     In connection with his request, Mr. McCuller noted that the Cottage Avenue Apartments would provide permanent housing to those with:

> (a) a diagnosable substance abuse disorder, or (b) a serious mental illness, or (c) a developmental disability, or (d) a chronic physical illness or disability, including co-occurrence of two or more of these conditions and that most residents [of the Cottage Avenue Apartments] will have a diagnosis of mental illness and long history of psychiatric hospitalization.

---

[1] § 656.366(a), City Code of Ordinances, provides that: "Original use means the original use of a structure at the time of its construction."

[2] The City's Planning Director is appointed by the mayor and confirmed by the City Council and serves at the pleasure of the Mayor.

31.     On April 3, 2014, Springfield residents organized a meeting, which was attended by Ability Housing and City officials, including Mr. Burney, City Zoning Administrator Folks Huxford, and City Councilmen Robin Lumb and Bill Gulliford.

32.     At the meeting, Springfield residents, including Mr. Meeks, voiced heated opposition to Ability Housing's plan based upon concerns that the disabled Tenants posed an unspecified threat to the Springfield neighborhood.

33.     Despite the vocal opposition from Springfield residents, Mr. Burney told those in attendance that, based upon what he knew, Ability Housing's proposed use of the Cottage Avenue Apartments—rental to chronically homeless, with a focus on disabled veterans—was a multiple-family dwelling, an allowed use under the Springfield Zoning Overlay.

34.     Mr. Huxford shared Mr. Burney's opinion that the proposed use was multiple-family.

35.     The following day, on April 4, 2014, Mr. McCuller wrote Mr. Burney again to repeat his argument that the proposed use of the Cottage Avenue Apartments was not allowed because the residents would have "diagnosed mental illnesses."

36.     Throughout April and May 2014, Mr. Meeks and Ms. Hipps scheduled multiple phone calls and meetings with Duval County School Board member Paula Wright in an effort to influence Ms. Wright and the Duval County School Board to oppose Ability Housing's proposed use of the Cottage Avenue Apartments.

37.     On April 29, 2014, Mr. Meeks sought a written interpretation from Mr. Burney, the City's Planning Director, that Ability Housing's proposed use of the Cottage

Avenue Apartments was prohibited by the Springfield Zoning Overlay because the Tenants would be disabled and require services.

38.     On May 15, 2014, School Board member Wright organized another public meeting with Ability Housing and area residents, including Mr. Meeks, who again voiced opposition to the project because the Tenants would be disabled. The meeting attendees also voiced similar sentiments of "take it [housing for the disabled] somewhere else" as had been voiced at the April 3, 2014 meeting.

39.     School Board member Wright also organized a "Community Walk for Awareness and Prevention" on May 17, 2014, which was attended by about 40 Springfield residents, including Mr. Meeks and City Councilman Johnny Gaffney.

40.     During the march, School Board member Wright "inform[ed] the neighborhood residents of the possibility of [Ability Housing's purchase and proposed operation of the Cottage Street Apartments to house the disabled]" and Councilman Johnny Gaffney voiced concerns that the disabled residents would pose a safety risk to area children.

41.     The statements made by Springfield residents, including numerous elected and appointed City officials, in opposition to Ability Housing's proposed operation of the Cottage Avenue Apartments did not provide any legitimate basis for the City to deny Ability Housing the opportunity to rent the Cottage Avenue Apartments

to chronically homeless, disabled individuals; rather, the statements were founded on illegitimate fears[3] based on the fact that the proposed residents are disabled.

42.     Within days following the march, Mr. Meeks and Ms. Tredennick each made significant campaign contributions to School Board member Wright.

43.     On or before May 23, 2014, Mr. Meeks met with Mayor Brown at Mr. Meeks's office in Springfield. At the meeting, Mr. Meeks and Mayor Brown discussed (a) Mr. Meeks's opposition to Ability Housing's proposed use of the Cottage Avenue Apartments; (b) zoning and code enforcement issues in the Springfield neighborhood; and (c) Mr. Meeks's interest in reducing the concentration of services and facilities for the homeless in downtown and Springfield. Also at the meeting, Mayor Brown (a) told Mr. Meeks to contact Mr. Burney to discuss his opposition to Ability Housing's proposed use of the Property and (b) solicited campaign contributions from Mr. Meeks.

44.     On or about May 23, 2014, at the direction of Mr. Burney, Mr. Huxford (the then Chief of the Current Planning Division,[4] part of the Planning & Development Department) prepared a draft written interpretation. The draft written interpretation concluded that "the funding source for the Ability Housing project does not render the facility a special use, but rather the use is a multiple-family dwelling permitted by right under the Zoning Code." A copy of the draft written interpretation is attached as **Exhibit 2.**

---

[3] Congress clearly recognized that such fears are illegitimate by enacting the ADA and FHA.
[4] Like the City's Planning Director, the City's Chief of the Current Planning Division is appointed by the mayor and confirmed by the City Council and serves at the pleasure of the Mayor.

45.     Also on or about May 23, 2014, Mr. Burney met with Mr. Meeks at Mr. Meeks's office in Springfield to discuss the request for a written interpretation and take a walking tour of Springfield. During the meeting, Mr. Meeks and Mr. Burney discussed Mr. Meeks's opposition to Ability Housing's proposed use of the Cottage Avenue Apartments.

46.     On May 29, 2014, Mr. Burney provided Mr. McCuller a written interpretation, a copy of which is attached as **Exhibit 3** (the "**Written Interpretation**").

47.     Despite the City's prior position that the proposed operation of the Cottage Avenue Apartments by Ability Housing was a multiple-family dwelling, the Written Interpretation gave in to the vocal opposition of Springfield residents and concluded that "the proposed use [of the Cottage Avenue Apartments] should be categorized as a special use rather than a multiple-family dwelling, and as such, would be considered a special use prohibited in the Springfield Zoning Overlay."

48.     Within days following the issuance of the Written Interpretation, Mr. Meeks made a significant campaign contribution to Mayor Brown.

49.     "Special uses include residential treatment facilities, rooming houses, emergency shelter homes, group care homes, and community residential homes over six residents." § 656.368(I)(d), City Code of Ordinances.

50.     Under the Springfield Zoning Overlay, "Special uses" are "not allowed in the [Springfield Historic] district." § 656.368(I)(d), City Code of Ordinances.

51.     In support of the Written Interpretation, Mr. Burney relied upon the fact that the Cottage Avenue Apartments would "serve chronically homeless adults" and that:

> [A]ll residents will have a disability diagnosed by a licensed professional health care provider, and it is anticipated that most residents will have a primary diagnosis of mental illness and a long history of psychiatric hospitalization.

52.     Ability Housing appealed the Written Interpretation, arguing that, because "the intended use [was] as independent and separate multiple-family residences for homeless veterans, without on-site provision of services, meals and the like, and without communal facilities," the proposed use was a multiple-family dwelling and not a special use. It also argued that a contrary interpretation would violate the FHA.

53.     Following Ability Housing's appeal of the Written Interpretation, but before a hearing on the appeal was held by the City's Planning Commission, Springfield residents engaged in a large-scale letter-writing and public relations campaign in opposition to Ability Housing's proposed purchase and operation of the Cottage Avenue Apartments, urging the Planning Commission to uphold the Written Interpretation.

54.     The primary argument against Ability Housing's plan for the Cottage Avenue Apartments again focused on (a) the fact that the Tenants would be chronically homeless and disabled, and (b) the belief that these disabled people might pose a threat to area residents.

55.     This campaign included face-to-face meetings between Mr. Meeks and planning commissioners, numerous e-mails from Springfield residents to the City and Planning Commission, a July 31, 2014 letter from Springfield resident Nikolai Vitti, the Superintendent of Duval County Public Schools, and School Board member Wright on Duval County Public Schools letterhead, in which Superintendent Vitti and Ms. Wright acknowledge that the Cottage Avenue Apartments would serve homeless, disabled adults before going on to conclude that this would pose a danger to children attending school nearby.

56.     The media covered the neighborhood opposition in a series of articles featured on Channel 4, WJCT, Jacksonville.com and Metrojacksonville.com.

57.     On September 4, 2014, the City's Planning Commission held a hearing on Ability Housing's appeal of the Written Interpretation.

58.     Numerous Springfield residents attended the September 4, 2014 hearing to oppose Ability Housing's proposed purchase and operation of the Cottage Avenue Apartments.

59.     The City's presentation to the Planning Commission focused on the fact that "Ability [Housing] specifically says the Cottage Avenue [A]partments will serve chronically homeless adults without children" and that "[a]ll residents will have a disability diagnosed by a licensed health care provider."

60.     The Planning Commission affirmed the Written Interpretation after refusing to consider whether the Written Interpretation or Springfield Zoning Overlay violated the FHA or ADA.

61.     Within days following the September 4, 2014 Planning Commission hearing, Mr. Meeks made a significant campaign contribution to Planning Commission member Lisa King's City Council campaign.

62.     To the extent that the Written Interpretation and decision on appeal were somehow proper under the Springfield Zoning Overlay—that is, to the extent that the Springfield Zoning Overlay itself prohibits housing for the disabled—the Springfield Zoning Overlay violates both the FHA and ADA.

## The City's Code Enforcement Action

63.     In direct response to Ability Housing's continued efforts to acquire and develop the Property despite the Written Interpretation and the Planning Commission's affirmance of the Written Interpretation, Mr. Burney, directed the City to file a state court action on November 21, 2014 against the current owner of the Cottage Avenue Apartments for its failure to obtain permits to replace 37 windows in 2010. It was the only code enforcement action filed by the City during Mayor Brown's administration. A copy of the Complaint filed by the City in the code enforcement action is attached as **Exhibit 4**.

64.     In its Complaint, the City seeks $19,000 per day for the unpermitted window replacement by the current owner, collectible through imposition of a lien on the Property.

65.     The penalties sought by the City potentially range into the millions of dollars, many times the market value of the Property.

66.     The City's claim to $19,000 per day in penalties is pretextual and not rationally related to any alleged harm that has been caused by the current owner.

67.     The City also recorded a Lis Pendens against the Property to prevent Ability Housing from closing on the purchase of the Cottage Avenue Apartments.

68.     The City's lawsuit was intended to frustrate and otherwise interfere with Ability Housing's efforts to purchase the Property and provide housing to the disabled.

**Further NIMBY Opposition and the City's Certificate of Use Denial**

69.     On July 1, 2015, the day Mayor Lenny Curry took office, Ability Housing submitted an application for a Certificate of Use (the "**COU Application**") to the City's Planning and Zoning Department.

70.     The COU Application noted that (a) the "Previous Use" of the Cottage Avenue Apartments was "Apartments," (b) the "Proposed Use" would be "Apartments," and (c) both the previous and proposed uses were multiple-family dwellings.

71.     Section 656.151 et seq. of the City's Code of Ordinances requires a certificate of use for "each multi-family building located within the City" and lays out the process for obtaining a certificate of use.

72.     Pursuant to Section 656.153 of the City's Code of Ordinances, the review process extends only to "changes in use, expansion of square footage or inclusion of new uses."

73.     Ability Housing did not propose a change in use, to expand square footage or to include new uses; instead, it only sought a certificate of use because of a change in ownership.

74.     While a certificate of use is required for any change in ownership, the City's Code of Ordinances does not set out a review process or criteria for reviewing certificate of use applications relating only to a change in ownership.

75.     As matter of practice, the City's Zoning Administrator issues certificates of use without input or direct oversight by the City's Planning Director.

76.     In the case of Ability Housing's COU Application, however, the Zoning Administrator (Sean Kelly) did <u>not</u> decide whether to approve it.

77.     Instead, that decision was made by the City's Planning Director (by that time, Mr. Huxford) in concert with the City's Office of General Counsel and Mayor Curry's Office.

78.     Before deciding whether to approve the COU Application, Mr. Huxford also spoke with the Mayor's Chief Administrative Officer, Sam Mousa, who told Mr. Huxford to follow the Written Interpretation. Mr. Huxford did not speak with the Zoning Administrator, who believed Ability Housing's proposed use of the Cottage Avenue Apartments was multiple-family, before deciding whether to approve or deny the COU Application.

79.     Mr. Mousa was also contacted on July 7, 2015 by Ms. Hipps seeking his "assistance in making sure a COU, or any other permitting . . . is not issued."

80.     While Mr. Huxford believed that the proposed use was a multiple-family dwelling in April and May 2014 when he served as the Chief of the Current Planning Division and wrote the draft written interpretation (Exhibit 2), by the time Mr. Huxford reviewed the COU Application as Planning Director, and despite the fact that Mr.

Huxford was not bound by the prior Planning Director's Written Interpretation, he followed Mr. Mousa's direction and denied the COU Application on July 29, 2015 (the "**COU Denial**," a copy of which is attached as **Exhibit 5**).

81.     Neither Mr. Burney nor Mr. Huxford received any training from the City on the ADA or the FHA and neither Mr. Burney nor Mr. Huxford ever considered whether the Written Interpretation, the COU Denial, or the Springfield Zoning Overlay violated the ADA or the FHA.

82.     On August 26, 2015, Ability Housing appealed the COU Denial.

83.     The City's Certificate of Use Board, chaired by Mr. Huxford, held a hearing on October 16, 2015 on the appeal of the COU Denial.

84.     Numerous Springfield residents, including City Councilman Reggie Gaffney, Mr. Meeks and Ms. Tredennick, also attended the October 16, 2015 appeal hearing.

85.     Before the hearing, Mr. Huxford spoke with Mr. Mousa and asked that Mr. Mousa notify the Mayor's Chief of Staff, Kerri Stewart, a Springfield resident, of the hearing because Mr. Huxford "thought she would want to know."

86.     At the outset of the hearing, Reggie Gaffney engaged in ex parte communications with Mr. Huxford and announced to the packed audience that, while he was had "just been told [he] cannot speak," he was "in support of the [Springfield] community and in opposition of [the City] moving forward with" approving rental of the Cottage Avenue Apartments to the disabled.

87.     Like Mr. Burney, Mr. Huxford, and the Planning Commission, the City's Certificate of Use Board refused to consider whether the COU Denial or the Springfield Zoning Overlay itself violated either the FHA or the ADA.

88.     At the conclusion of the appeal hearing, the City's Certificate of Use Board denied Ability Housing's appeal and subsequently issued an Order Denying Appellant's Appeal of Certificate of Use, a copy of which is attached as **Exhibit 6**.

### The City's Retaliation

89.     In 2007, the City launched *The Jacksonville Journey* (the "***Journey***") to stem and reverse the tide of crime in the City.

90.     Among the initiatives supported by the *Journey* is a matching grant program to help provide affordable housing. This initiative is spearheaded by the Local Initiatives Support Corporation ("**LISC**").

91.     LISC works with community development corporations to assist in creating affordable housing opportunities in Jacksonville.

92.     Ability Housing is one of the community development corporations that LISC supports.

93.     Every year, from the *Journey's* launch until last fiscal year, some of the City's funds administered by LISC (approximately $68,000 in FY 2014-2015) have been provided to Ability Housing to support its mission.

94.     In December, 2015, during the most recent round of *Journey* funding, LISC sought to continue to provide *Journey* funding to Ability Housing.

95.     However, after LISC informed the City of its intention, the City told LISC that it could no longer provide Ability Housing with any of the City's *Journey* funds because Ability Housing had exercised its rights under the FHA and ADA, including bringing this action against the City.

96.     LISC brought the City's decision to the attention of Ms. Stewart for reconsideration. Ms. Stewart confirmed the City's position by stating that neither LISC nor any other organization could provide *Journey* funds or any other City funds to Ability Housing.

## Impact on Ability Housing

97.     The City's decisions to (a) issue the Written Interpretation, (b) deny Ability Housing's appeal of the Written Interpretation, (c) institute the code enforcement action, (d) deny Ability Housing's COU Application, (e) deny Ability Housing's appeal of the COU Denial and (f) retaliate against Ability Housing for exercising its rights under the ADA and FHA were motivated by animus of the City's decision-makers, or those to whom the City's decision-makers were responsive, toward the Tenants on account of their disabilities and Ability Housing on account of its exercise of its rights under the ADA and FHA.

98.     As a result of the City's decisions, Ability Housing has been damaged in the following ways:  (a) Ability Housing was unable to purchase the Cottage Avenue Apartments; (b) Ability Housing failed to receive the Florida Housing funding; (c) Ability Housing failed to receive the benefit of funds paid for services relating to the Cottage Avenue Apartments; (d) Ability Housing is unable to fulfill its mission to end

homelessness for twelve disabled veterans by renting them an apartment at the Cottage Avenue Apartments; and (e) the City has deprived Ability Housing of the opportunity to obtain and use *Journey* funds to provide affordable housing.

99.     All conditions precedent to bringing this action have occurred or have been waived.

100.    Ability Housing has employed the law firm of Akerman LLP to represent its interests herein and is entitled to recover attorneys' fees and costs in this action.

<u>**COUNT ONE**</u>
**(Violation of FHA)**

101.    Ability Housing re-alleges paragraphs 1-88 and 97-100.

102.    Each Tenant suffers from a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of having such an impairment or is being regarded as having such an impairment.

103.    The City is violating Ability Housing's rights under the FHA by doing the following on account of the Tenants' handicaps:

- denying and otherwise making housing unavailable to Ability Housing and the Tenants;

- using the City's Springfield Zoning Overlay as a pretext to exclude Ability Housing and the Tenants;

- enforcing discriminatory zoning rules and policies against Ability Housing and the Tenants;

- interfering with Ability Housing's right to offer and with each Tenant's right to live in a dwelling of each Tenant's choice;

- failing to make reasonable accommodations in the City's Springfield Zoning Overlay and its application to afford Ability Housing and the

Tenants an equal opportunity to use and enjoy the Cottage Avenue Apartments; and

- making, printing or publishing, or causing to be made, printed or published a statement in connection with the sale or rental of housing that indicates a limitation, preference or discrimination on the basis of handicap.

104. Ability Housing has been irreparably injured by the City's discriminatory housing practices toward Ability Housing and the handicapped Tenants.

105. Unless the City is enjoined from violating the FHA, Ability Housing will continue to suffer harm as it will be unable to purchase and operate apartment housing in the Springfield Historic District to provide homes to disabled, homeless persons.

106. The injuries caused to Ability Housing as a result of the City's discriminatory housing practices and denial of the Certificate of Use outweigh any potential harm to the City which would result from entry of an injunction enjoining the City from continuing to violate the FHA.

107. An injunction enjoining the City from violating the FHA and continuing to deny Ability Housing the right to purchase and operate apartment housing in the Springfield Historic District to provide homes to disabled, homeless persons would not disserve the public interest. To the contrary, an injunction, which would allow Ability Housing to fulfill its mission by purchasing and operating apartment housing in the Springfield Historic District, would serve the public interest by providing homes to 12 disabled, homeless persons in Jacksonville.

**WHEREFORE,** Plaintiff, Ability Housing, Inc. requests that the Court enter judgment in its favor and against the City of Jacksonville:

a. Declaring that the City has illegally discriminated against Ability Housing and the handicapped individuals Ability Housing serves in violation of the FHA;

b. Declaring that the Springfield Zoning Overlay violates the FHA;

c. Enjoining the City from violating the FHA;

d. Awarding Ability Housing damages available under the FHA;

e. Awarding Ability Housing its reasonable attorneys' fees and costs; and

f. Granting such other relief as is just and proper.

<u>**COUNT TWO**</u>
**(Violation of ADA)**

108. Ability Housing re-alleges paragraphs 1-88 and 97-100.

109. Ability Housing provides housing to people with disabilities as defined in 42 U.S.C. § 12102(2).

110. The Tenants are "qualified individuals with a disability" under 42 U.S.C. § 12131(1).

111. Each Tenant's disability substantially limits one or more of his or her major life functions.

112. The City is a "public entity" under 42 U.S.C. § 12131(1).

113. Actions by the City to exclude Ability Housing and the disabled Tenants from the Springfield Historic District violate Ability Housing's and the disabled Tenants' rights under the ADA and the regulations promulgated thereunder.

114. The City is violating Ability Housing's rights under the ADA by doing the following on account of the Tenants' disabilities:

- denying Ability Housing and the disabled Tenants the opportunity to participate in or benefit from the supportive housing that Ability Housing offers;

- using and administering land use and building codes with the purpose and effect of subjecting Ability Housing and the disabled Tenants to discrimination;

- subjecting Ability Housing and the disabled Tenants to discrimination;

- using the City's Springfield Zoning Overlay and permitting requirements to deny Ability Housing and its disabled Tenants the enjoyment of rights, privileges, advantages, and opportunities enjoyed by non-disabled individuals in a manner that is discriminatory against Ability Housing and its disabled Tenants.

**WHEREFORE,** Plaintiff, Ability Housing, Inc. requests that the Court enter judgment in its favor and against the City of Jacksonville:

a. Declaring that the City has illegally discriminated against Ability Housing and the disabled individuals Ability Housing serves in violation of the ADA;

b. Declaring that the Springfield Zoning Overlay violates the ADA;

c. Awarding Ability Housing damages available under the ADA;

d. Awarding Ability Housing its reasonable attorneys' fees and costs; and

e. Granting such other relief as is just and proper.

## COUNT THREE
### (Retaliation)

115. Ability Housing re-alleges paragraphs 1-100.

116. Ability Housing engaged in acts protected by 42 U.S.C. § 12203 and 42 U.S.C. § 3631.

117.    The City has retaliated against Ability Housing in violation of 42 U.S.C. § 12203 and 42 U.S.C. § 3631 on account of Ability Housing having engaged in such protected acts.

118.    Ability Housing has suffered damages as a result of the City's violation of 42 U.S.C. § 12203 and 42 U.S.C. § 3631.

**WHEREFORE,** Plaintiff, Ability Housing, Inc. requests that the Court enter judgment in its favor and against the City of Jacksonville:

a.    Declaring that the City has illegally retaliated against Ability Housing in violation of the ADA and FHA;

b.    Awarding Ability Housing damages available under the ADA and FHA;

d.    Awarding Ability Housing its reasonable attorneys' fees and costs; and

e.    Granting such other relief as is just and proper.

Dated:  May 17, 2016

By:____/s Edward Cole_____
Edward Cole (Fla. Bar No. 0574511)
Heather Solanka (Fla. Bar No. 0497347)
Allison Stocker (Fla. Bar No. 0084472)
**AKERMAN LLP**
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730
E-mail:  edward.cole@akerman.com
E-mail:  heather.solanka@akerman.com
E-mail:  allison.stocker@akerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on May 17, 2016, using the Court's CM/ECF system, which will cause a copy to be served on the following counsel of record:

Jason R. Teal
Wendy E. Byndloss
Office of General Counsel
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Email: jteal@coj.net
Email: wbyndloss@coj.net
Email: JeanH@coj.net

David Boyer
Molly Jean Paris
Disability Rights Florida
1930 Harrison Street, Suite 104
Hollywood, Florida 33020
Email: davidb@DisabilityRightsFlorida.org
Email: mollyp@DisabilityRightsFlorida.org
Curtis C. Filaroski
Disability Rights Florida
2473 Care Drive
Tallahassee, Florida 32308
Email: curtisf@DisabilityRightsFlorida.org

_____/s/ Edward Cole_____