UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ABILITY HOUSING, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF JACKSONVILLE,<br><br>        Defendant. | Case No. 3:15-cv-1380-TJC-PDB |
| DISABILITY RIGHTS FLORIDA, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF JACKSONVILLE,<br><br>        Defendant. | Case No. 3:15-cv-1411-TJC-PDB |
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF JACKSONVILLE, FLORIDA<br><br>        Defendant. | Case No. 3:16-cv-1563-TJC-PDB |

## CONSENT DECREE BETWEEN THE UNITED STATES OF AMERICA AND THE CITY OF JACKSONVILLE, FLORIDA

The United States of America alleges as follows:

1

# NATURE OF ACTION

1. The United States initiated this action to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended ("FHA"), 42 U.S.C. §§ 3601 *et seq.*, and Titles II and V of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12131–12134, 12203, and their implementing regulation, 28 C.F.R. Part 35. In its Complaint, the United States alleges that the City of Jacksonville, Florida ("City") discriminated on the basis of disability, in violation of the FHA and ADA, by preventing Ability Housing, Inc. ("Ability Housing") from developing permanent supportive housing for people with disabilities within its Springfield Historic District ("Springfield") and by retaliating against Ability Housing after it made a complaint under the FHA and ADA.

2. The United Stated alleges in the Complaint that the City's application of its Zoning Code to Ability Housing has denied or has otherwise made housing unavailable because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(1); that the City denied Ability Housing's requests for a reasonable accommodation to the Zoning Code when such accommodation may have been necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B); and that the City retaliated against Ability Housing because it made a complaint under the FHA, in violation of 42 U.S.C. § 3617.

3. The United States alleges that the City's actions constitute a denial of rights protected by the FHA to a group of persons, which raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

4. The United States also alleges that the City violated Title II of the ADA, 42 U.S.C. § 12132, by excluding individuals with disabilities from participation in, and by denying them the benefits, services, programs, or activities of a public entity, as well as by failing to make reasonable modifications to its policies, practices, or procedures; and that the City violated Title V of the ADA, 42 U.S.C. § 12203, by discriminating against Ability Housing because it opposed an act or practice made unlawful by Title II of the ADA.

5. On November 18, 2015, Ability Housing filed a federal lawsuit in this Court under the FHA and ADA against the City (Case No. 3:15-CV-1380) alleging claims related to those alleged in the United States' Complaint. Disability Rights Florida, an advocate for people with disabilities throughout Florida (together with Ability Housing, "the Private Plaintiffs"), also filed suit on November 25, 2015 (Case No. 3:15-CV-1411). In the two suits, which are consolidated with the United States' Complaint, the Private Plaintiffs and the City reached a settlement agreement resolving the Private Plaintiffs' complaints ("Private Settlement Agreement"). The Private Settlement Agreement appears as Appendix A. As stipulated in the Private Settlement Agreement, within 10 days of the City's fulfillment of its obligations under the Private Settlement Agreement, the Private Plaintiffs will dismiss with prejudice their cases (Case Nos. 3:15-CV-1380 and 3:15-CV-1411).

6. The United States and the City have voluntarily agreed to resolve the United States' claims against the City by entering into this Consent Decree ("Decree"), as indicated by the signatures below and by the ratification of the Decree by the Jacksonville

City Council on May 23, 2017, through Ordinance No. 2017-68-E. Together with the Private Settlement Agreement, as incorporated herein, this Decree is intended to effect a comprehensive settlement of the United States' and the related claims of the Private Plaintiffs.

7. The City expressly denies any wrongdoing as alleged by the United States in the Complaint. It is understood and acknowledged that this Decree does not constitute an admission by the City of any violation of the FHA, ADA, or any other law.

Therefore, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## **JURISDICTION**

8. This Court has jurisdiction over this action, and may grant the relief sought herein, pursuant to 28 U.S.C. §§ 1331 and 1345; 42 U.S.C. § 3614(a); 42 U.S.C. §§ 12132-12133, 12203(c); and 28 U.S.C. §§ 2201 and 2202.

## **GENERAL INJUNCTION AND NONDISCRIMINATION PROVISIONS**

9. The City, its agents, employees, successors, and all persons in active concert or participation with it, shall not:

   a. Deny, or otherwise make unavailable, a dwelling to a buyer or renter because of a disability (as that term is defined by the FHA and the ADA) of that buyer or renter, of any person residing in or intending to reside in such dwelling, or of any person associated with such buyer or renter;

   b. Adopt, maintain, enforce, or implement any zoning or land use laws, regulations, policies, procedures or practices that discriminate on the basis of disability in violation of the FHA and the ADA;

c. Refuse to make reasonable accommodations[1] in the application of rules, policies, practices or services when such accommodations may be necessary to afford a person or persons with disabilities an equal opportunity to use and enjoy a dwelling; or

d. Coerce, intimidate, threaten, or interfere with persons in the exercise of or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA or ADA.

**SPECIFIC INJUNCTIVE RELIEF**

10. As stipulated in the Private Settlement Agreement, the City shall rescind the May 29, 2014 Written Interpretation related to Ability Housing within 10 days of the City Council's approval of the Private Settlement Agreement referenced in Paragraph 5, above.

11. The City shall not deem any entity or individual(s) ineligible to receive City funds on the basis that the entity or individual(s) complained, in any manner and including but not limited to filing a lawsuit or pursuing litigation, that the City discriminated against the entity, individuals whom the entity supports, or the individual(s), in violation of their civil rights. Ability Housing is therefore eligible to apply for, compete for, and to receive Jacksonville Journey and any other City funds

---

[1] In this Decree, the term "reasonable accommodation," see 42 U.S.C. § 3604(f)(3)(B), also includes "reasonable modification," as used in the implementing regulation for Title II of the ADA, 28 C.F.R. § 35.130(b)(7).

administered by the City, the Local Initiative Support Corporation ("LISC"), or by any other entity for which Ability Housing is otherwise qualified to receive notwithstanding its current litigation with the City in Case No. 3:15-CV-1380 (and Case No. 2014-CA-8148 in the Circuit Court, Fourth Judicial District, in and for Duval County, Florida, which is now dismissed).

12. As stipulated in the Private Settlement Agreement, and as extended by agreement of the parties, on May 23, 2017, the City amended its Zoning Code, Chapter 656 of the City of Jacksonville Ordinance Code, by passing Ordinance No. 2017-36-E, which appears in Appendix B. Among other changes, these amendments make clear that the permanent supportive housing at issue in the Complaint is properly characterized as a multiple-dwelling use and is permitted wherever multiple-family dwellings are permitted. The amendments generally include changes to the following:

    a. Part 1 (General Provisions), Subpart A (Basic Provisions) to recognize and require construction of the Zoning Code consistent with civil rights laws;

    b. Part 1 (General Provisions), Subpart B (Administration) to create a procedure for persons with disabilities to request reasonable accommodations from provisions of the Zoning Code;

    c. Part 3 (Schedule of District Regulations), Subpart F (Planned Unit Development) to prohibit the use of planned unit developments to discriminate or violate civil rights;

    d. Part 3 (Schedule of District Regulations), Subpart I (Springfield Zoning Overlay and Historic District Regulations) to remove prohibitions on

housing for people with disabilities, allow group care homes by exception in the RMD-S district, and to allow residential treatment facilities as allowable uses by exception in the CCG-S district; and

e. Part 16 (Definitions) to amend definitions to make clear that the permanent supportive housing at issue in the Complaint is properly characterized as a multiple-dwelling use and is permitted wherever multiple-family dwellings are permitted; to add definitions for supportive services and reasonable accommodations; and to ensure that the definitions reflect that a resident's receipt of supportive services in a dwelling unit does not change the dwelling unit into another type of use.

## REASONABLE ACCOMMODATION POLICY

13. As stipulated in the Private Settlement Agreement and referenced in Paragraph 12(b), the City has amended its Zoning Code, as detailed in Ordinance No. 2017-36-E, to create a process for requesting reasonable accommodations from the Zoning Code. *See* Appendix B. Within sixty (60) days of the entry of this Decree, the City shall also submit to the United States a written policy that details the process by which persons may request reasonable accommodations or modifications on the basis of disability from the City's zoning, land use, and code requirements ("Reasonable Accommodation Policy" or "Policy"). Prior to its implementation, the Policy must be approved by the United States. The Policy shall comply with the FHA and the ADA and shall include the following provisions:

a. The City shall provide a description of where and how the City will accept and process requests for accommodations in its rules, policies, practices, or in the provision of its services;

b. The City shall acknowledge all requests for reasonable accommodations, in writing, within fifteen (15) days of the City's receipt of an oral or written request;

c. The City shall provide written notification to those requesting a reasonable accommodation of the decision regarding their request for accommodation within the timeframes established in Ordinance No. 2017-36-E;

d. The City shall retain records of all oral and written reasonable accommodation and modification requests, and the City's responses thereto, including (i) the name, address, and telephone number of the person making the request; (ii) the date on which the request was received; (iii) the nature of the request; and (iv) the final written decision regarding the request; and

e. The City shall not impose any fees or costs for requesting a reasonable accommodation or modification, or otherwise retaliate against any person who has exercised his or her right under the Fair Housing Act to make one or more reasonable accommodation requests.

14. Within ten (10) days of the approval of the Reasonable Accommodation Policy by the United States and throughout the term of this Decree, the City shall implement the Policy. The City shall post and publicly display the Policy on the City's

website, and at the offices of the City with responsibility for administration and enforcement of the City's zoning, land use, and code requirements.

## COMPLIANCE OFFICER

15. Within thirty (30) days of the entry of this Decree, the City shall designate an individual as the Fair Housing Compliance Officer ("FHCO"). The FHCO shall have the responsibility to receive complaints of alleged housing discrimination and disability discrimination against the City; serve as a resource to the City and its officers, elected and appointed officials, employees, and agents on fair housing and disability rights; and in consultation with the City's attorneys, the Office of General Counsel, coordinate the City's compliance with this Decree.

16. The FHCO shall be designated to receive and review all complaints of housing discrimination and disability discrimination made against the City or any officer, elected or appointed official, employee, or agent of the City. If complaints are made verbally, the FHCO shall make a contemporaneous written record of those complaints.

17. The FHCO shall maintain copies of this Decree, the Reasonable Accommodation Policy, and the HUD Complaint form and HUD pamphlet entitled "Are you a victim of housing discrimination?" (HUD official forms 903 and 903.1, respectively) and make these materials available to anyone, upon request, without charge, including all persons making fair housing complaints to the FHCO.

18. The FHCO shall report to the City every three months on activities taken in compliance with this Decree.

## **FAIR HOUSING AND ADA TRAINING**

19. Within ninety (90) days of the entry of this Decree, the City shall provide training(s) on the requirements of the Decree, the FHA (in particular, those provisions that relate to disability discrimination), and the ADA (in particular, the ADA's application to zoning). The training(s) shall be provided to all City officers, elected and appointed officials, and employees who have duties related to the planning, zoning, permitting, construction, code enforcement, or occupancy of residential housing, including but not limited to professional staff and employees of the Planning and Development Department, the Mayor and members of the City Council, and members of the Planning Commission and Certificate of Use Board. The training(s) shall be conducted in accordance with the following:

    a. The training(s) shall be conducted by a qualified third party or parties, subject to the approval of the United States. The trainer(s) shall not be connected to the City or its officers, elected or appointed officials, employees, agents or counsel. No fewer than sixty (60) days before the date of each training under this Paragraph, the City shall submit to counsel for the United States the name of the person(s) or organization(s) proposed to provide the training, together with copies of the professional qualifications of such person(s) or organization(s), and copies of all materials to be used in the training.

    b. Any expenses associated with the training(s) shall be borne by the City.

    c. The training(s) shall be video-recorded and the City shall maintain copies

of the written materials provided for each training. Each newly elected, appointed, or hired individual covered by this Paragraph shall first receive training within thirty (30) days after the date he or she enters office or commences service or employment, either (1) by attending the next regularly scheduled live training, if it occurs within the thirty (30) day period, or (2) by viewing the video recording of the most recent live training and receiving copies of any written materials provided for that training.

    d. The City shall provide a copy of this Decree to each person required to receive the training(s).

20. The City shall require each trainee to execute a certification confirming: (i) the trainee's attendance; (ii) the date of the training; and (iii) the trainee's receipt and comprehension of the Decree. The Certification of Training and Receipt of Consent Decree appears as Appendix C to this Decree. All trainees shall complete the certifications at the conclusion of each training session.

## REPORTING AND RECORDKEEPING

21. Within one hundred (100) days of the entry of this Decree, the City shall submit all executed copies of the Certification of Training and Receipt of Consent Decree (Appendix C) described in Paragraph 20.[2]

---

[2] The City shall send all documents, notices, and other communications required by the Decree to be sent to the United States via regular U.S. mail to:
    Chief, Housing and Civil Enforcement Section
    Civil Rights Division
    United States Department of Justice
    950 Pennsylvania Ave., NW – G Street

22. The City shall prepare compliance reports twice annually detailing all actions the City has taken to fulfill its obligations under this Decree since the last compliance report. The City shall submit its first report to the United States within six (6) months of entry of the Decree, and subsequent reports every six (6) months thereafter for the duration of the Decree, except that the final report shall be delivered to the United States not less than sixty (60) days prior to the expiration of this Decree. The City shall include in the compliance reports, at a minimum, the following information:

   a. The name, address, and title of the employee or official serving as the Fair Housing Compliance Officer referred to in Paragraph 15;

   b. A summary of each zoning or land-use request or application, including requests for reasonable accommodations, related to housing for persons with disabilities, indicating: (i) the date of the application; (ii) the applicant's name; (iii) the applicant's current street address; (iv) the street address of the subject property or proposed housing; (v) the City's decision(s) regarding the matter, including any decision on appeal; (vi) the reasons for each decision, including a summary of the facts upon which the City relied; and (vii) complete copies of any minutes and audio or video recordings from all meetings or hearings discussing the zoning request or application;

Washington, DC 20530
Attn: DJ# 175-17M-513

    c. Copies of any Certifications of Training and Receipt of Consent Decree (Appendix C) described in Paragraph 20, above, that are signed after the preceding compliance report was issued; and

    d. Any complaints of housing discrimination or disability discrimination by the City, either received by the FHCO pursuant to Paragraph 16 or by another City employee or official, including a copy of the complaint, any documents filed with the complaint, and any written response to the complaint by the City. If the complaint has not been resolved, the City shall report any efforts the City undertook or plans to undertake to resolve the complaint.

23. Within thirty (30) days of adopting any amendments or modifications to the Zoning Code or to other City rules, laws, or ordinances that may detrimentally or directly affect housing for persons with disabilities, the City shall send copies of the enacted amendments or modifications to the United States. Any amendment or modification must be consistent with Paragraph 12 of this Decree.

24. The City shall retain all records relating to any provision of this Decree. Counsel for the United States shall have the opportunity to inspect and copy any such records after giving reasonable notice to counsel for the City.

## COMPENSATION OF AGGRIEVED PARTIES

25. Within thirty (30) days of the City Council's approval of the Private Settlement Agreement, the City shall pay Ability Housing and Disability Rights Florida the amounts agreed upon in the Private Settlement Agreement (Appendix A).

26. As stipulated in the Private Settlement Agreement, within one (1) year of the Private Plaintiffs' dismissal of their cases (Case Nos. 3:15-CV-1380 and 3:15-CV-1411), the City shall establish and award a 1.5 million dollar ($1,500,000) grant for the development of Permanent Supportive Housing within the City for persons with disabilities. The grant shall be awarded to a qualified developer through a competitive grant process. Ability Housing shall be eligible to participate in the grant process and to receive some or all of the grant award.

## CIVIL PENALTY

27. Within ten (10) days of the entry of this Decree, the City shall pay twenty-five thousand dollars ($25,000) to the United States Treasury as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The payment shall be in the form of an electronic fund transfer pursuant to written instructions to be provided by the United States.

28. In the event that the City, its agents, or its employees engage in any future violation(s) of the FHA, such violation(s) shall constitute a "subsequent violation" under 42 U.S.C. § 3614(d)(1)(C)(ii).

## MODIFICATION

29. Any proposed modification or change that could affect the terms of this Decree shall be brought to the Court's attention via a written motion. No modification or change shall be effective unless ordered by the Court.

## DURATION

30. This Decree shall remain in effect for a period of five (5) years after its entry. The Court shall retain jurisdiction over the action for the duration of the Decree for the purpose of enforcing its provisions and terms. The United States may move the Court to extend the duration of the Decree in the interests of justice. If the Court has not ruled on a motion to extend the duration of the Decree or on a motion for enforcement of the Decree by the time the Decree is set to expire, the Decree and its terms will remain in effect until the Court rules on the pending motion(s).

31. The parties shall jointly move the Court to extend any time limits for performance imposed by this Decree.

32. All obligations under the Decree will expire at the end of the five (5) year period unless extended by order of the Court. *or as provided in paragraph 30.* (TSC)

## ENFORCEMENT

33. The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by the City to perform in a timely manner any act required by this Decree or otherwise to act in conformance with any provisions thereof, the United States may move this Court to impose any remedy authorized by law or equity.[3] Remedies include, but are not limited to, findings of contempt, an order requiring performance of such act or deeming such act

---

[3] Only the United States, and no other party, is authorized to seek enforcement of this Consent Decree.

15

to have been performed, and an award of any damages, costs, and reasonable attorneys' fees that may have been occasioned by the violation or failure to perform.

## COSTS AND FEES

34. The parties will bear their own costs and fees associated with this litigation.

## TERMINATION OF LITIGATION HOLD

35. The parties agree that, as of the date of the entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described above. To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such litigation hold. Nothing in this Paragraph relieves either party of any other obligations imposed by this Consent Decree.

**For Plaintiff United States:**

Dated: 6/28/17

*[signature]*

YOHANCE A. PETTIS
Fla. Bar No. 021216
Assistant United States Attorney
Middle District of Florida
United States Attorney's Office
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Phone: (813) 274-6000
Fax: (813) 274-6198
Yohance.Pettis@usdoj.gov

W. STEPHEN MULDROW
Acting United States Attorney
Middle District of Florida

T.E. WHEELER, II
Acting Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

*[signature: Abigail Marshak]*

MICHAEL S. MAURER
Deputy Chief
ABIGAIL B. MARSHAK
NY Reg. No. 5350053
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue NW – G St.
Washington, DC 20530
Phone: (202) 514-1968
Fax: (202) 514-1116
Abigail.Marshak@usdoj.gov

**For Defendant City of Jacksonville:**

Dated: 6/27/17

*[signature]*

JASON R. TEAL
Fla. Bar No. 157198
Office of General Counsel
City of Jacksonville, Florida
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: (904) 630-1087
Facsimile: (904) 630-1731
jteal@coj.net

*[signature]*

SAM MOUSA
Chief Administrative Officer
Office of Mayor Lenny Curry
City of Jacksonville, Florida

17

**DONE AND ORDERED** at Jacksonville, Florida this 29 day of June, 2017.

Timothy J. Corrigan
TIMOTHY J. CORRIGAN
United States District Judge