# APPENDIX A

# [Private Settlement Agreement]

*(Pages 12-42 of the Private Settlement Agreement – the substance of which is included in this Consent Decree's Appendices – are omitted from Appendix A to avoid duplication)*

Amended 5/23/17

Introduced by the Council President at the request of the Office of General Counsel and amended on the Floor of Council:

**ORDINANCE 2017-69-E**

AN ORDINANCE APPROPRIATING $425,000 FROM GENERAL FUND/GENERAL SERVICE DISTRICT FUND BALANCE TO PROVIDE FUNDING FOR THE SETTLEMENT OF TWO SEPARATE BUT CONSOLIDATED FEDERAL LITIGATION MATTERS; APPROVING THE SETTLEMENT OF CLAIMS, INCLUDING CLAIMS FOR ATTORNEY'S FEES AND COURT COSTS, IN TRIAL PROCEEDINGS ARISING FROM *ABILITY HOUSING OF NORTHEAST FLORIDA, INC. V. THE CITY OF JACKSONVILLE, CASE NO. 3:15-CV-1380-J-32PDB*, UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA AND *DISABILITY RIGHTS FLORIDA, INC. V. THE CITY OF JACKSONVILLE, CASE NO. 3:15-CV-1411-TJC-JRK*, UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, FOURTH JUDICIAL CIRCUIT IN AND FOR DUVAL COUNTY, FLORIDA, AS INITIATED BY B.T. 17-059; PROVIDING FOR AN EFFECTIVE DATE.

**WHEREAS**, Ability Housing of Northeast Florida, Inc. ("Ability Housing") and Disability Rights Florida ("DRF") filed the above-styled actions against the City of Jacksonville ("the City") (collectively, "the Parties"), claiming violations of the Fair Housing Act and the Americans with Disabilities Act ("the Litigation"); and

**WHEREAS**, the Litigation was consolidated into one case and was

scheduled for a two-week jury trial commencing in February 2017; and

**WHEREAS,** the Parties met in an effort to resolve the Litigation prior to trial due to the uncertainties associated with litigation and the potential ramifications of an adverse ruling; and

**WHEREAS,** as a result of the discussions, the Parties have reached an agreement in principle as to resolve the contested issues in the Litigation in the form and pursuant to the terms of that certain "*Settlement Agreement and Release*" attached hereto as **Second Revised Exhibit 1,** labeled as "Second Revised Exhibit 1, 2nd Rev Agmt, May 23, 2017 – Floor"; and

**WHEREAS,** Section 112.307 of the Jacksonville Ordinance Code requires City Council's approval of a settlement where, as here, its proposed value exceeds $50,000.00; and

**WHEREAS**, subject to and dependent upon the passage of City Council legislation adopting the *Settlement Agreement and Release* and appropriating funds as therein contemplated would render additional Federal Court proceedings unnecessary and avoid compounding costs and burden otherwise incurred by the Parties; now therefore

**BE IT ORDAINED** by the Council of the City of Jacksonville:

**Section 1.** **Appropriation.** For the 2016-2017 fiscal year, within the City's budget, there are hereby appropriated the indicated sum(s) from the account(s) listed in subsection (a) to the account(s) listed in subsection (b):
(B.T. 17-059 attached hereto as **Exhibit 2** and incorporated herein by this reference)

    (a) Appropriated from:
        See B.T. 17-059          $425,000

    (b)    Appropriated to:

            See B.T. 17-059          $425,000

    (c)    **Explanation of Appropriation** - The funding above is to provide $425,000 from General Fund/General Service District Fund Balance for the settlement of two separate but consolidated Federal litigation matters.

**Section 2.**    **Purpose.** The purpose of the appropriation in Section 1 is to provide $425,000 in funding for the settlement of two separate but consolidated Federal litigation matters identified as Ability Housing of Northeast Florida, Inc. v. the City of Jacksonville (Case No. 3:15-CV-1380-J-32PDB) and Disability Rights Florida, Inc. v. City of Jacksonville (Case No. 3:15-CV-1411-TJC-JRK), as described in the Settlement Agreement and Release attached hereto as **Second Revised Exhibit 1,** labeled as "Second Revised Exhibit 1, 2nd Rev Agmt, May 23, 2017 – Floor."

**Section 3.**    **Ratification and Approval of Settlement Agreement; Authorization to Implement.** There is hereby ratified and approved and the Mayor, or his designee, is authorized to implement, for and on behalf of the City, the terms and conditions of the *Settlement Agreement and Release* in the form hereto attached as **Second Revised Exhibit 1,** labeled as "Second Revised Exhibit 1, 2nd Rev Agmt, May 23, 2017 – Floor", between the Parties, and to take, or cause to be taken, for and on behalf of the City, such further action as is necessary to effectuate the purpose of this Ordinance.

**Section 4.**    **Effective Date.** This Ordinance shall become effective upon signature by the Mayor or upon becoming effective without the Mayor's signature.

Form Approved:

*[signature: Jason Teal]*

Office of General Counsel

Legislation Prepared By: Jason R. Teal

GC-#1127905-v1-2017-69-E.doc

# SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (*"Settlement Agreement"*) is entered into between the Plaintiffs in the below referenced lawsuits, Ability Housing, Inc. f/k/a Ability Housing of Northeast Florida, Inc. (*"Ability Housing"*) and Disability Rights Florida (*"DRF,"* and collectively with Ability Housing, *"Plaintiffs"*), and Defendant, the City of Jacksonville, (*"The City"*) (collectively, the *"Parties"*).

## RECITALS

A.   These actions are currently pending in the United States District Court for the Middle District of Florida, styled as *Ability Housing, Inc. v. City of Jacksonville*, Case No. 3:15-cv-1380-J-32PDB, and *Disability Rights Florida v. City of Jacksonville*, Case No. 3:15-cv-1411, which have been consolidated under Case No. 3:15-cv-1380 (the consolidated cases shall hereinafter be referred to as the *"Action"*).

B.   Ability Housing is a non-profit corporation based in Jacksonville whose mission is to provide quality, affordable, community inclusive housing for individuals and families at risk of homelessness and adults with disabilities.

C.   DRF is a federally funded, non-profit corporation whose mission is to advance the quality of life, dignity, equality, self-determination, and freedom of choice of persons with disabilities through collaboration, education, advocacy, as well as legal and legislative strategies.

D.   Ability Housing sought to redevelop an existing 12-unit apartment building in the City's Springfield neighborhood for the purpose of renting units to disabled, chronically homeless persons, as permanent supportive housing,[1] using a grant from the Florida Housing Finance Corporation (the *"Project"*). Before permits were obtained to redevelop the building, the Director of the Planning and Development issued a Written Interpretation on May 29, 2014, which distinguished multi-family housing (allowed by right) from the proposed use of the Project and concluded that it was a prohibited Special Use in the Springfield Overlay District. The Written Interpretation's rationale distinguished the proposed use from the allowed multi-family use on the basis that the residents would have disabilities and receive support services. On appeal to the Planning Commission, where Ability Housing alleged that the federal fair housing laws prohibited such a distinction, the Commission upheld the Written Interpretation.

E.   In 2015, Ability Housing sought a Certificate of Use from the Zoning Administrator for the Project, asserting that a denial would be unlawful discrimination against persons with disabilities and providers of housing for persons with disabilities. The City denied the Certificate of Use, citing to the Written Interpretation. On appeal to the Certificate of Use Appeals Board, the City again denied the Certificate, citing to the Written Interpretation.

F.   Ability Housing brought the Action under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (*"FHA"*), and the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* (*"ADA"*),

---

[1] Permanent supportive housing includes making health and social services available to residents.

alleging that the City violated Ability Housing's rights and expressly discriminated against persons with disabilities by denying Ability Housing a Certificate of Use for the Project. Additionally, Ability Housing alleged that the City retaliated against Ability Housing for having asserted rights under the FHA and ADA by withholding grant monies that had previously been awarded to Ability Housing and by instituting a code enforcement action against the current owner of the property for the proposed Project. Specifically, Ability Housing alleged that: (i) Local Initiatives Support Coalition (*"LISC"*) was instructed by at least one City official to not make an annual grant of City "Jacksonville Journey" funds to Ability Housing because Ability Housing sued the City, and because the City does not issue grants to organizations which are in active disputes with the City; (ii) thereafter, LISC did not make an annual grant of Jacksonville Journey Funds to Ability Housing; and (iii) LISC had granted Ability Housing Jacksonville Journey funds in prior years.

G. Ability Housing alleged that, because of the City's actions, Florida Housing Finance Corporation withdrew the $1,355,222 grant awarded to Ability Housing to purchase and renovate the 12-unit apartment building. Further, Ability Housing alleges that it was unable to proceed with the Project, it has lost certain out-of-pocket money that it expended on its efforts to pursue the proposed Project, and it has expended attorneys' fees and costs pursuing the Action.

H. DRF brought the Action under the FHA and ADA, alleging that the City's zoning ordinance, the Springfield Overlay, which included a prohibition on new group care homes, residential treatment facilities, and community residential homes within a defined area of Springfield, facially discriminates against persons with disabilities by denying them the right to reside in the dwelling of their choice.

I. The City denies Plaintiffs' allegations, including denying that its actions violated any Federal, State or local law or regulation or that Plaintiffs are entitled to recover any damages in the Action. However, the City affirms that it is its policy, and the policy of the United States, that it is illegal to discriminate against disabled persons, including persons with mental disabilities and providers of housing to disabled persons, and including any retaliation against such persons for asserting their rights, and that disabled persons have the right to live in the neighborhood of their choosing in furtherance of the purposes of these policies.

J. The Parties have investigated the facts and have analyzed the relevant legal issues with regard to the claims and defenses asserted in the Action. The Parties continue to maintain that their respective claims and defenses are viable. However, the Parties have also weighed the uncertainties of trial and the benefits to be obtained under the proposed settlement, and have considered the costs, risks, and delays associated with the continued prosecution of these complex and time-consuming causes of action and the likely appeals of any rulings in favor of either Plaintiffs or the City. These considerations were made after substantial discovery including voluminous document production and numerous depositions.

K. Accordingly, it was the Parties' intention to negotiate in good faith in an attempt to compromise the Parties' respective positions, arguments and defenses and develop and agree upon settlement terms. The Parties' objective for this Settlement Agreement is to encapsulate the settlement terms and conclude this matter to avoid the costs of further litigation and trial, and to settle and dispose of, fully and completely and forever, any and all claims and causes of action

that were asserted or that could have been asserted in the Action on account of the Project or alleged retaliatory conduct by the City.

## AGREEMENT

1.  **DEFINITIONS.** The following section defines terms that are not defined above. Some definitions use terms that are defined later in this section:

    1.1  The term *"City's Counsel"* means Jason Teal, Esquire and Wendy Byndloss, Esquire, Office of General Counsel, City Hall, 117 West Duval Street, Suite 480, Jacksonville, Florida 32202.

    1.2  The term *"City Council"* means the City Council of the City of Jacksonville.

    1.3  The term *"Court"* means the United States District Court for the Middle District of Florida, where the Action is pending.

    1.4  The term *"Effective Date"* means the date the City Council approves this Settlement Agreement.

    1.5  The term *"Ordinance Code"* means the City of Jacksonville Ordinance Code.

    1.6  The term *"Plaintiffs' Counsel"* shall mean:

        1.6.1  On behalf of Ability Housing: Edward Cole, Esquire and Allison Stocker, Esquire, Akerman LLP, 50 N. Laura Street, Suite 3100, Jacksonville, FL 32202; and

        1.6.2  On behalf of DRF: David Boyer, Esquire, and Molly Jean Paris, Esquire, Disability Rights Florida, 1930 Harrison Street, Suite 104, Hollywood, FL 33020.

    1.7.  The term *"Settlement"* means the settlement of the Action.

    1.8  The term *"Zoning Code"* shall refer to Chapter 656 of the Ordinance Code.

2.  **SETTLEMENT TERMS.**

    2.1  **Rescission of Written Interpretation.** Within ten (10) days of the Effective Date, the City shall rescind the May 29, 2014 Written Interpretation related to the Project.

    2.2  **Proposed Amendment of City Ordinance.** Within thirty (30) days of the Effective Date, the City's Counsel shall submit and present a proposed ordinance in substantially the form set forth on **Exhibit A** to this Settlement Agreement to the

Jacksonville City Council for approval. The Parties recognize that they cannot bind the City Council through this Settlement Agreement and that the proposed ordinance may be altered or rejected during the legislative process. The amendments shall generally include changes to the following:

    (a)    Part I (General Provisions), Subpart A (Basic Provisions) to recognize and require construction of the Zoning Code consistent with civil rights law, including the FHA and ADA;

    (b)    Part I (General Provisions), Subpart B (Administration) to create a procedure for persons with disabilities to request reasonable accommodations from provisions of the Zoning Code;

    (c)    Part 3 (Schedule of District Regulations), Subpart F (Planned Unit Development) to prohibit the use of planned unit developments to discriminate or violate civil rights;

    (d)    Part 3 (Schedule of District Regulations), Subpart I (Springfield Zoning Overlay and Historic District Regulations) to remove certain prohibitions on housing for persons with disabilities, allow group care homes for persons with disabilities by exception in the RMD-S district, and to allow residential treatment facilities as allowable uses by exception in the CCG-S district; and

    (e)    Part 16 (Definitions) to amend definitions of group care home for persons with disabilities and residential treatment facilities, and to add definitions for supportive services and reasonable accommodation.

    (f)    To recognize that a disabled resident's receipt of supportive services in a dwelling unit, provided by the owner, management or third parties, does not change a multiple-dwelling unit or other dwelling unit into another type of differently regulated use.

    **2.3**    **Compensation to Plaintiffs.** Within (30) days after the Effective Date or the date on which Plaintiffs' Counsel provides the City with a Form W-9, whichever is later, the City shall pay the following compensation to:

        **2.3.1**  **Ability Housing**: $400,000, by check payable to "Akerman LLP Trust Account," which represents Ability Housing's out-of-pocket expenses and a portion of Ability Housing's reasonable attorneys' fees and costs, but excludes Jacksonville Journey funds Ability Housing did not receive; and

        **2.3.2**  **DRF**: $25,000, by check payable to "Disability Rights Florida Trust Account," which represents DRF's reasonable attorneys' fees and costs.

    **2.4**    **Dismissal with Prejudice.** Within ten (10) days of the later of (a) payment of the Compensation to Plaintiffs as detailed in Section 2.3, above, or (b) City

Council enacting an ordinance as specified in Section 2.2, above, and the ordinance becoming law, Plaintiffs will dismiss their respective lawsuits, with prejudice, with each party to bear its own fees and costs (except as agreed in Section 2.3, above). Notwithstanding the foregoing, the dismissal shall not divest the Court or jurisdiction to enforce the terms of this Settlement Agreement.

**2.5  Eligibility for Jacksonville Journey and Other City Grant Funds.** Upon execution of this Settlement Agreement, Ability Housing shall be eligible to apply and compete for "Jacksonville Journey" funds and any other City funds administered by the City, LISC or any other entity for which Ability Housing is otherwise qualified to receive. If for any reason this Settlement Agreement is terminated, then subject to applicable laws, the City shall determine whether Ability Housing is eligible to apply and compete for any City funds. No entity shall receive any funds if it is in litigation with the City except litigation involving claims alleging a violation by the City of any party's civil rights.

**2.6  Grant for Development of Permanent Supportive Housing.** Within one (1) year following dismissal of the Action, the City shall establish and award a grant of $1.5 million ($1,500,000) for the development of "Permanent Supportive Housing" within the City for persons with disabilities. The grant shall be awarded to a qualified developer through a competitive grant process. Ability Housing shall be eligible to participate in the grant process and to receive some or all of the grant award. The definition of "Permanent Supportive Housing" in the grant shall be the same definition used by the U.S. Department of Housing and Urban Development (*"HUD"*) to wit:

> Long-term, community-based housing that has supportive services for homeless persons with disabilities. This type of supportive housing enables special needs populations to live as independently as possible in a permanent setting. The supportive services may be provided by the organization managing the housing or coordinated by the applicant and provided by other public or private service agencies. Permanent housing can be provided in one structure or several structures at one site or in multiple structures at scattered sites. There is no definite length of stay.

**2.7  Parties' General Release.** Subject to fulfillment of all Conditions Precedent as described in section 2.8 below and as of the later of (a) payment of the Compensation to Plaintiffs as detailed in Section 2.3, or (b) the Effective Date of this Settlement Agreement, Plaintiffs, and each of Plaintiffs' successors and assigns, shall release and forever discharge the City from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages (including punitive or any other form of exemplary damages), charges, fines, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which they have or may have arising out of any of the acts, omissions or other conduct of the City complained of in the Action, including any claims or actions that were or could have been alleged in the Action. Subject to fulfillment of all Conditions Precedent as described in section 2.8 below and as of the later of (a) payment of the Compensation to Plaintiffs as detailed in Section 2.3, or (b) the Effective Date of this Settlement Agreement, the City shall release and forever discharge the Plaintiffs, and each of Plaintiffs' successors and

assigns, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages (including punitive or any other form of exemplary damages), charges, fines, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which they have or may have arising out of any of the acts, omissions or other conduct of the Plaintiffs in the Action, including any claims or actions that were or could have been alleged in the Action. This release shall not affect the Parties' right to enforce the terms of the Settlement Agreement.

**2.8  Conditions Precedent.** This Settlement Agreement is contingent upon the following conditions: (a) approval and authorization to bind the City of Jacksonville under this Settlement Agreement by City Resolution or Ordinance; (b) introduction by the City's Counsel of an ordinance substantially similar to the attached draft ordinance; (c) enactment of an ordinance by the City substantially similar to the attached draft ordinance (the ***"Zoning Ordinance"***) (both (b) and (c) to occur by April 30, 2017; however this deadline may be extended by mutual consent of the Parties); and (d) DRF's and Ability Housing's right to approve or disapprove of any changes made to the Zoning Ordinance from the attached draft. DRF's and Ability Housing's right to approve or disapprove changes to the draft Zoning Ordinance in this paragraph 2.8 (d) shall be in their sole discretion. Should these conditions not be met, Ability Housing and/or DRF may elect to terminate this Settlement Agreement and proceed forward with their claims in the Action. Any non-terminating Plaintiff may elect to continue to be bound by this Settlement Agreement. DRF and Ability Housing recognize the City Council's exclusive authority to enact legislation; such right to approve or disapprove the Zoning Ordinance is only as to their rights to determine whether or not to terminate the Settlement Agreement.

**3.  ADDITIONAL PROVISIONS**

**3.1  The City's Denial of Wrongdoing.** This Settlement Agreement reflects the Parties' compromise and Settlement of the disputed claims. Its provisions, and all related drafts, communications and discussions, cannot be construed as or deemed to be evidence of an admission or concession of any point of fact or law (including, but not limited to, the FHA, ADA, or the proper interpretation of Florida Laws and the Jacksonville Municipal Code and related ordinances, or the existence of any alleged violations thereof) by any person or entity and cannot be offered or received into evidence or requested in discovery in the Action or any other action or proceeding as evidence of an admission or concession.

**3.2  Voluntary Agreement.** The Parties acknowledge they have each executed this Settlement Agreement voluntarily and without duress or undue influence.

**3.3  Binding on Successors.** This Settlement Agreement binds and benefits the Parties' respective successors and assigns.

**3.4  Parties Represented by Counsel.** The Parties acknowledge that: (a) they have been represented by independent counsel of their own choosing during the negotiation of this Settlement Agreement and the preparation of this Settlement Agreement; (b) they have read this Settlement Agreement and are fully aware of its contents; and (c) their respective counsel fully explained to them the Settlement Agreement and its legal effect.

**3.5  Authorization.** Each Party warrants and represents that there are no liens or claims of lien or assignments, in law or equity, against any of the claims or causes of action released by this Settlement Agreement and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge. To the extent any such liens exist, the Parties expressly agree to waive those liens in order to effectuate this Settlement Agreement.

**3.6  Entire Agreement.** This Settlement Agreement and attached exhibit contain the entire agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to the Action. This Settlement Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Settlement Agreement.

**3.7  Construction and Interpretation.** Neither Party nor any of the Parties' respective attorneys will be deemed the drafter of this Settlement Agreement for purposes of interpreting any provision in this Settlement Agreement in any judicial or other proceeding that may arise between them. This Settlement Agreement has been, and must be construed to have been, drafted by all the Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

**3.8  Headings and Formatting of Definitions.** The various headings used in this Settlement Agreement are solely for the Parties' convenience and may not be used to interpret this Settlement Agreement. Similarly, bolding and italicizing of definitional words and phrases is solely for the Parties' convenience and may not be used to interpret this Settlement Agreement. The headings and the formatting of the text in the definitions do not define, limit, extend, or describe the Parties' intent or the scope of this Settlement Agreement.

**3.9  Exhibits.** The exhibit to this Settlement Agreement is an integral part of the Settlement Agreement and the Settlement and is incorporated into this Settlement Agreement as though fully set forth in the Settlement Agreement. A refusal to approve the Exhibit in substantially the same form in which it appears in this document shall constitute a refusal to approve this Settlement Agreement.

**3.10  Modifications and Amendments.** No amendment, change, or modification to this Settlement Agreement, whether proposed by the Parties or the Court, will be valid unless agreed upon in a writing signed by the Parties or their counsel.

**3.11  Enforcement.** The Parties agree that the Court shall retain jurisdiction over the Parties to enforce the terms of this Settlement Agreement.

**3.12  Governing Law.** This Settlement Agreement is governed by Florida law and must be interpreted under Florida law and without regard to conflict of laws principles.

**3.13  Further Assurances.** The Parties must execute and deliver any additional papers, documents and other assurances, and must do any other acts reasonably necessary, to perform their obligations under this Settlement Agreement and to carry out this Settlement Agreement's expressed intent.

**3.14 Agreement Constitutes a Complete Defense.** To the extent permitted by law, this Settlement Agreement may be pled as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceedings that may be instituted, prosecuted or attempted in breach of or contrary to this Settlement Agreement.

**3.15 Execution Date.** This Settlement Agreement is deemed executed on the date the Settlement Agreement has been signed by all of the undersigned.

**3.16 Counterparts.** This Settlement Agreement may be executed in counterparts, each of which constitutes an original, but all of which together constitutes one and the same instrument. Several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies of executed copies of this Settlement Agreement may be treated as originals.

**3.17 Recitals.** The Recitals are incorporated by this reference and are part of the Settlement Agreement.

**3.18 Severability.** If any provision of this Settlement Agreement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Settlement Agreement will continue in full force and effect.

**3.19 Inadmissibility.** This Settlement Agreement (whether or not approved, revoked, or made ineffective for any reason) and any proceedings or discussions related to this Settlement Agreement are inadmissible as evidence of any liability or wrongdoing whatsoever in any Court or tribunal in any state, territory, or jurisdiction except that this provision shall not prohibit any Party from introducing this Settlement Agreement in an effort to enforce the terms of this Settlement Agreement.

**3.20 No Conflict Intended.** Any inconsistency between this Settlement Agreement and the attached exhibit will be resolved in favor of this Settlement Agreement.

**3.21 List of Exhibits:** The following exhibit is attached to this Settlement Agreement:

Exhibit A – Proposed Ordinance

**3.22 Waivers.** No failure to exercise and no delay in exercising any right, remedy, or power under this Settlement Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power under this Settlement Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy, or power provided herein or by law or in equity.

[Intentionally Blank/Signature Pages Follow]

The Parties have agreed to the terms of this Settlement Agreement and have signed below.

ABILITY HOUSING, INC., f/k/a ABILITY HOUSING OF NORTHEAST FLORIDA, INC.

By: _____
Greg Matovina, Chairman

Date: 12/27/16

Witness: _____

Print name: SARA JO HALL

Date 12/27/16

DISABILITY RIGHTS FLORIDA

By: *[signature]* _____
Maryellen McDonald, Executive Director
[Name and Title]

Date: 12/29/2016

_Susan P. Morgan_
Witness

Print name: SUSAN P. MORGAN

Date 12/29/2016

**THE CITY OF JACKSONVILLE**

By: _____

Its: Chief Administrative Officer

Date: __1/03/17__

_____
Witness

Print name: __Kandi R. Bogue__

Date: __1/3/17__

ORDINANCE 2017-69-E

CERTIFICATE OF AUTHENTICATION

ENACTED BY THE COUNCIL

May 23, 2017

_____
LORI BOYER
COUNCIL PRESIDENT

ATTEST:

DR. CHERYL L. BROWN
COUNCIL SECRETARY

APPROVED: MAY 25 2017

_____
LENNY CURRY, MAYOR

